[Cite as *In re A.H.*, 2011-Ohio-5822.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95661**

## IN RE: A.H.
## A Minor Child

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 10100171

**BEFORE:**     Sweeney, J., Stewart, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:**     November 10, 2011

**ATTORNEY FOR APPELLANT, A.H.**

Sheryl A. Trzaska, Esq.
Assistant State Public Defender
Office of the Ohio Public Defender
250 East Broad Street, Suite 1400
Columbus, Ohio 43215

**ATTORNEYS FOR APPELLEE, STATE OF OHIO**

William D. Mason
Cuyahoga County Prosecutor
By: Richard Hanrahan, Esq.
        Michael D. Horn, Esq.
        Justin S. Gould, Esq.
Assistant County Prosecutors
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44115

JAMES J. SWEENEY, J.:

{¶ 1} Appellant A.H. appeals his juvenile delinquency adjudication for felonious assault with firearm specification and associated commitment to the Ohio Department of Youth Services (ODYS). After reviewing the facts of the case and pertinent law, we affirm.

{¶ 2} On January 8, 2010, Tony Hines looked out of his bedroom window and saw two males, later identified as A.H. and his brother D.W., attempting to break into a

neighbor's house. The brothers saw Hines in the window and took off running. Approximately ten minutes later, Hines saw A.H., who was wearing a black hoodie, approach the neighbor's house again and pry open the storm door using a screwdriver. Hines went outside, began talking to A.H., and walked him from the porch to the sidewalk in front of the house.

{¶ 3} Hines was looking for D.W., who was wearing a red hoodie, when he heard a gunshot. Hines turned to the right and saw D.W. in the driveway with a gun pointed at him. Hines asked A.H. who was shooting at him. A.H. replied, "That's my brother back there shooting at you." Hines told A.H. to tell his brother D.W. to stop shooting. Hines testified that A.H. began "jiggling around, telling his brother to stop shooting at me." Hines did not see A.H.'s hands because they were in his pockets. Hines turned away from A.H. to look at D.W. and heard two more gunshots. At that point, Hines realized he was shot in the lower left abdomen.

{¶ 4} According to Hines, a total of three shots were fired, and it was the third shot that hit him. Asked if he knew who shot him, Hines testified that, "I can't specifically say who shot me, but I can specifically say I was shot." However Hines also testified that it was not possible that D.W. shot him, because he was shot in the left side of his abdomen, and D.W. was standing to the right of Hines approximately 20-25 feet away.

{¶ 5} Shawn Smith, who is a United States Postal Service letter carrier, testified that he was delivering mail on 93rd Street on January 7, 2010, when he heard two

gunshots. He looked down the street and saw two individuals standing in a yard about ten houses away. The two people were standing approximately three feet to three yards away from one another. One of the individuals was wearing black, and he pointed a gun at the other individual, who tried to grab it. The individual with the gun fired two shots at the other individual's torso. Smith testified that he did not know if the one individual was hit by any of the shots.

{¶ 6} According to Smith, there were a total of four shots. He heard the first two, but did not see anything. He looked in the direction of the gunfire and within 30 seconds, saw the person wearing black fire two shots at the other individual. The shooter started to run away, then stopped. He was still holding the gun. The shooter began to pace back and forth in the street and eventually walked away, disappearing out of Smith's view.

{¶ 7} Asked if he would find it strange if the man who was allegedly shot testified that he never saw the gun he was shot with, Smith stated as follows: "I would find it more than strange. * * * [B]ecause * * * he actually reached out and grabbed the gun. * * * If he said he didn't see a gun, I would find that very strange and I would actually wonder why I'm here."

{¶ 8} A joint exhibit was admitted into evidence showing the results of gunshot residue tests performed by the Bureau of Criminal Identification and Investigation ("BCI"). BCI found "[p]articles highly indicative of gunshot primer residue on the samples from [D.W.'s] gloves." However, no residue was found on the samples from

A.H. or D.W.'s hands. The parties stipulated that A.H.'s hands tested negative for gunshot residue; however, this "does not preclude the fact that possibly [A.H.] did, in fact, discharge a firearm * * *."

{¶ 9} On July 28, 2010, A.H. was adjudicated delinquent in juvenile court as to one count of felonious assault in violation of R.C. 2903.11(A)(1) and/or (A)(2), with firearm specifications, and one count of attempted burglary in violation of R.C. 2911.12(A)(4) and R.C. 2923.02, with firearm specifications.

{¶ 10} On August 4, 2010, the court held a dispositional hearing and committed A.H. to the Ohio Department of Youth Services (ODYS) as follows: a minimum of 12 months for the felonious assault in violation of R.C. 2903.11(A)(2) to run consecutive to two years for the firearm specification, with "a maximum period not to exceed the child's attainment of the age of twenty-one (21) years."

{¶ 11} A.H. appealed and we remanded to the juvenile court for disposition of the attempted burglary offense. *In re A.H.*, Cuyahoga App. No. 95661, 2011-Ohio-2039. Upon remand, the court disposed of the attempted burglary as follows: "[A.H.] is released to the custody of parent/guardian * * *."

{¶ 12} A.H. appeals and raises one assignment of error for our review, arguing that his adjudication for felonious assault with firearm specification is against the manifest weight of the evidence. Specifically, A.H.'s argument is threefold: first, the victim and eyewitness's testimony is inconsistent as to whether A.H. had or shot a gun; second,

the gunshot residue test performed on A.H. was negative; and third, A.H. was not acting with the same purpose as D.W. and was not complicit in the shooting.

{¶ 13} The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:

{¶ 14} "The appellate court sits as the 'thirteenth juror' and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶ 15} As to the gunshot residue, the test results contain the following information: "The presence of gunshot primer residue on a person's hands is consistent with that individual having discharged a firearm, having been in the vicinity of a firearm when it was discharged, or having handled an item with gunshot primer residue on it. The absence of gunshot primer residue on a person's hands does not preclude the possibility of any of the above stated events." Additionally, the parties stipulated that the gunshot residue evidence was not dispositive of whether A.H. fired a gun.

{¶ 16} In finding A.H. delinquent, the court stated that it believed Smith's testimony that A.H. fired a gun and that Hines did not see this. The court also stated that even if A.H. did not have a gun, he would still be found delinquent under a complicity theory because he participated in the criminal act with D.W.

{¶ 17} Upon review, we find that the court's reconciliation of Hines's and Smith's testimony is not against the manifest weight of the evidence. Hines testified that he did not see who shot him; he did not see A.H. with a gun, but he looked away from A.H. as A.H. was jiggling his hands in his pockets; and in his opinion, D.W.'s shots did not hit him because the bullet entered him from the opposite side. Smith testified that an individual in black had a gun, which another individual tried, but failed, to grab. The individual in black raised and pointed the gun and fired two shots at the other individual. The evidence in the record shows that A.H. was wearing black, and the court could reasonably infer that A.H. was the person who Smith saw fire the gun.

{¶ 18} Accordingly, A.H.'s sole assignment of error is overruled and his delinquency adjudication is affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Juvenile Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

JAMES J. SWEENEY, JUDGE

MELODY J. STEWART, P.J., and
LARRY A. JONES, J., CONCUR